IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. |
| v. | 1:17-CR-00354-MHC-LTW |
| ELVIS GORDON and IVAN PONDER, | |
| Defendants. | |

**MAGISTRATE JUDGE'S ORDER, REPORT AND
RECOMMENDATION AND ORDER CERTIFYING
THIS CASE READY FOR TRIAL**

Pending before this Court are three motions brought by Defendants Elvis Gordon and Ivan Ponder ("Defendants"). (Docs. 34-36). For the reasons outlined below, this Court concludes as follows:

(1)   Defendants' Motion to Dismiss Counts for Failure to Allege an "Official Act" Within the Meaning of the Bribery Statute should be **DENIED**. (Doc. 34).

(2)   Defendants' Motion to Dismiss Counts for Failure to Allege an Offense should be **DENIED**. (Doc. 35).

(3)   Defendants' Motion for a Bill of Particulars should be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 36).

## I.   BACKGROUND

On October 17, 2017, a grand jury in the Northern District of Georgia returned an Indictment against Defendants charging them with conspiring to commit bribery, in violation of 18 U.S.C. § 371. Defendant Ponder was also charged with ten counts of

corruptly paying bribes, in violation of 18 U.S.C. § 201(b)(1).  Defendant Gordon was charged with: (1) ten counts of corruptly accepting bribes, in violation of 18 U.S.C. § 201(b)(2); (2) one count of participating in a matter in which he had a conflict of interest, in violation of 18 U.S.C. § 208; and (3) one count of submitting a false claim for payment, in violation of 18 U.S.C. § 287.

A.     **The Indictment**

Count I of the Indictment details the alleged conspiracy between Defendants.  The Indictment alleges that Defendant Gordon worked for the United States Food and Drug Administration ("FDA") and was "responsible for scheduling and overseeing certain building maintenance" for the FDA's Atlanta facility (the "facility"), "including identifying and selecting vendors to perform certain maintenance and janitorial work" for the facility.  (Doc. 1 ¶¶ 1-2).  In this role, Defendant Gordon allegedly "selected and influenced the selection of vendors who performed the work required; reviewed proposals for accuracy and economic impact to the FDA; validated performance, and certified completion for payment."  (Doc. 1 ¶ 2).  Until August 2015, Defendant Gordon was "authorized to hire vendors directly" for certain maintenance projects below a threshold dollar amount, called "micro-purchases," without going through the federal procurement process.  (Id. at ¶ 3).  Additionally, other FDA personnel allegedly relied on Gordon to provide "sound information and advice on which vendors to utilize" for these projects.  (Id.).  According to the Indictment, Defendant Gordon used his position to obtain personal benefits in exchange for selecting certain vendors to perform work

2

at the facility.  (Doc. 1 ¶ 4).

P&E Management, LLC ("P&E") was allegedly a Georgia corporation formed around October 2010 that supplied building maintenance and janitorial services.  (Doc. 1 ¶ 5).  According to the Indictment, Defendant Ponder was a manager and owner of P&E, and had the primary responsibility for "managing P&E's work at the FDA Office and P&E's financial affairs, including its bank accounts."  (Id. at ¶ 6).  The Indictment alleges that between November 2010 and February 2016, Defendant Gordon "selected and influenced the selection of" P&E to perform building maintenance projects at the facility, using his micro-purchase authority to pay Defendant Ponder and by directing other FDA employees to use their micro-purchase authority to pay Defendant Ponder. (Id. at ¶ 7).  The Indictment also alleges that in exchange for Defendant Gordon using his position and influence to ensure P&E was selected to perform work at the facility, Defendant Ponder paid Defendant Gordon directly by issuing or causing to be issued checks payable to him and O.C., Defendant's romantic partner, for his personal benefit. (Id. at ¶ 8).  The Indictment also alleges Defendant Ponder acting with and through P&E, gave Defendant Gordon indirect payments by (1) making monthly payments for at least four years for a vehicle purchased for O.C., which was insured by Defendant Gordon; (2) giving Defendant Gordon a debit card linked to a business checking account, which Defendant Gordon used to pay for personal purchases at gasoline stations, restaurants, other business establishments, and to fund his personal travel; and (3) allowing Defendant Gordon to use his P&E debit card to pay for work-related travel

3

expenses, for which he then claimed reimbursement from FDA for himself.  (Id. at ¶ 9).

Defendant Gordon allegedly accepted all of Defendant Ponder's direct and indirect

payments.  (Id. at ¶ 11).

Counts II-XI charge Defendant Gordon with bribery and allege Defendant

Gordon, a public official, "directly and indirectly, did corruptly demand, seek, receive,

accept, and agree to receive and accept" eleven separate payments, all drawn on P&E

business account, in return for "being influenced in the performance of an official act,

that is promoting, selecting, contracting with, and making recommendations and

requests for work to be performed at the facility by Defendant and P&E.  (Doc. 1 at ¶

12).  Counts XII-XXI charge Defendant Ponder with bribery and allege Defendant

Ponder, through eleven separate payments, "directly and indirectly, did corruptly give,

offer, and promise a thing of value," with the intent to influence Defendant Gordon to

perform an official act.  (Doc. 1 at ¶ 14).

On February 5, 2018, Defendants filed a Motion to Dismiss Counts for Failure to

Allege An "Official Act" Within the Meaning of the Bribery Statutes, and a Motion to

Dismiss Counts for Failure to Allege an Offense.  (Docs. 34-35).  On February 5, 2018,

Defendants also filed a Motion for a Bill of Particulars.  (Doc. 36).  On February 22,

2018, the Government responded to Defendants' Motions.  (Docs. 38-39).

## DEFENDANTS' MOTION TO DISMISS COUNTS FOR FAILURE TO ALLEGE AN "OFFICIAL ACT" WITHIN THE MEANING OF THE BRIBERY STATUTE

In Defendants' Motion to Dismiss Counts For Failure to Allege an "Official Act"

4

Within the Meaning of the Bribery Statute, Defendants argue Counts I-XXI (conspiracy to commit bribery and bribery charges) should be dismissed because they fail to allege an "official act" as defined by the bribery statute. (Doc. 34). According to Defendants, the acts alleged in the indictment (e.g. "promoting, selecting, contracting with, and making recommendations and requests for work to be performed") are not official acts. (Id.). Defendants also contend that the acts alleged in the Indictment are "broad categories" and do not identify the specific official acts Defendant Gordon performed in return for alleged payments. Defendants further argue Defendant Gordon did not have the authority to commit the official acts alleged in the Indictment. (Id.). According to Defendants, since the Indictment fails to allege an official act taken by Defendant Ponder, Counts I-XXI fail to allege an offense under 18 U.S.C. § 201. (Id.). In response, the Government contends Counts I-XXI sufficiently allege facts that, if proven true, would support convictions for bribery.

Federal Rule of Criminal Procedure 12(b)(3)(B) allows a defendant to file a motion, alleging a defect in the indictment or information. Fed. R. Crim. P. 12(b)(3)(B). "An indictment is considered legally sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." United States v. Schmitz, 634 F.3d 1247, 1259 (11th Cir. 2011). The sufficiency of a criminal indictment is determined from its face. United States v. Salman, 378 F.3d 1266, 1268

(11th Cir. 2004) (quoting <u>United States v. Critzer</u>, 951 F.2d 306, 307 (11th Cir. 1992)). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." <u>United States v. Garrett</u>, 467 F. App'x 864, 867 (11th Cir. 2012), <u>citing</u> <u>Hamling v. United States</u>, 418 U.S. 87, 117 (1974); <u>see also</u> <u>Critzer</u>, 951 F.2d at 307-08.  In determining whether the indictment satisfies this standard, the court must accept all allegations contained therein as true.  <u>See</u> <u>United States v. Sharpe</u>, 438 F.3d 1257, 1258-59 (11th Cir. 2006).

18 U.S.C. § 201(b)(1) and (2) define the crime of bribery, which consists of two separate crimes, one for giving ((b)(1)), and one for receiving ((b)(2)).  18 U.S.C. § 201(b)(1)-(2).  Bribery requires a showing that something of value was corruptly given, offered, or promised to a public official (as to the giver) or corruptly demanded, sought, received, accepted, or agreed to be received or accepted by a public official (as to the recipient) with intent, inter alia, "to influence any official act" (giver) or in return for being influenced in the performance of any official act" (recipient).  <u>Id.</u>

Subsection (a) of § 201 sets forth definitions applicable to the section -- including a definition of "official act," § 201(a)(3).  <u>See</u> 18 U.S.C. § 201(a)(3).  There are two requirements the Government must identify to constitute an "official act": (1) a "question, matter, cause, suit, proceeding or controversy" that "may at any time be pending" or "may by law be brought" before a public official; and (2) a decision or

action that a public official took "on" that question, matter, cause, suit, proceeding, or controversy, or an agreement the official made to do so.  Id.

As to the first requirement, the Government must allege a "question, matter, cause, suit, proceeding or controversy" that "connote a formal exercise of governmental power, such as a lawsuit, hearing, or administrative determination." McDonnell v. United States, 136 S.Ct. 2355, 2368 (2016).  Second, an action is "pending" and "may by law be brought" before a public official when that thing " can be put on an agenda, tracked for progress, and then checked off as complete." Id. at 2369.

Regarding the second requirement, the Government must allege that the public official not only made a decision or action, but that the official made a decision or action to take *on* that particular question or matter, or agreed to do so. See id. at 2370. The public official can either make the decision or action themselves, or use his official position to exert pressure on another official to perform an official act.  Id.  For instance, the Court has held that a typical meeting, call, or event is not by itself a "decision or action," but when a meeting, call, or event regarding a matter that is pending or could be pending before a public official is used to exert pressure on or give advice to that official, it may become a decision or action.  See id.  The ultimate decision of whether an official took action by attempting to exert pressure or give advice to another official belongs to the jury.  Id. at 2371 (explaining that it is up to the jury to decide whether the official was attempting to exert pressure or advise another official on a pending matter when he held the meeting, call, or event)).

7

In this case, the Indictment includes the essential elements of bribery under 18 U.S.C. § 201(a)-(b). The Indictment not only references the statute, but it also tracks the language of the statute in that it provides Defendant Gordon performed official acts in exchange for payments from Defendant Ponder. Compare Counts One and Two, Doc. 1 with 18 U.S.C. § 201(a)-(b). Defendants contend, however, the acts alleged in the indictment are not "official acts" as defined in United States v. Sun-Diamond Growers of Ca., 526 U.S. 398 (1999) and McDonnell v. United States, 136 S. Ct. 2355 (2016).

In Sun-Diamond, an agricultural trade association was charged, among other things, with violating 18 U.S.C. § 201 (c)(1)(A), for allegedly giving the Secretary of Agriculture (the "Secretary") gifts in exchange for favorable decisions by the Secretary. Sun-Diamond, 526 U.S. at 401. The indictment against the trade association, while mentioning certain matters as to which the association allegedly had an interest in favorable treatment from the Secretary at the time that the association made the gifts, did not allege a specific connection between those matters or the Secretary's actions and the gratuities. Id. at 403. The association therefore moved to dismiss[1] the conviction

---

[1] While in the district court, the defendant first moved to dismiss the gratuity charge from the indictment, which the court denied. Sun-Diamond, 526 U.S. at 402-03. At trial, the district court provided the jury with instructions insinuating that the Government need not have shown that the Secretary performed, or would have performed, certain specific official acts. Id. at 403. After being convicted on the gratuity charge, the defendant appealed the conviction. See id. The United States Court of Appeals for the District of Columbia Circuit reversed the defendant's conviction on the illegal gratuity charge and remanded the case for a new trial on that charge, as the court ruled that the district court's instructions had invited the jury to

8

AO 72A
(Rev.8/82)

on that charge on the grounds that it did not allege a specific official act taken by the Secretary in exchange for the gratuities provided by the association. See Sun-Diamond, 526 U.S. at 405. The Government argued it was sufficient that the indictment show that gratuities were given to the Secretary simply because of his administrative position; the indictment need not allege specific acts taken by the Secretary. Id.

The Court found the Government's interpretation of 18 U.S.C. § 201(c) did not fit squarely with the statutory text, which prohibits gratuities given or received *because of* any *official act* performed or to be performed. Id. at 406 (emphasis added). Therefore, the Court reasoned that the Government must prove a link between a thing of value conferred upon a public official and a specific "official act" for or because of which it was given. Id. Consequently, the Government had to allege specific official acts taken by the public official, not rely on his title as proof that he had taken official acts. Id. The Court also indicated that its decision "cast doubt" on the district court's decision upholding the sufficiency of the Government's indictment. Id. at 414.

In McDonnell, the Court defined the definition of an official act. See McDonnell, 136 S. Ct. at 2367-74. In McDonnell, petitioner, a former Virginia governor, was indicted for honest services fraud and Hobbs Act extortion charges. See id. at 2364-65. According to the Government, the petitioner committed at least five "official acts,"

---

convict on materially less evidence than the statute demanded. Id. at 403-04. The Government then appealed the conviction reversal to the Supreme Court. Id. at 404. The issue regarding the sufficiency of the indictment was not brought on certiorari. Id. at 414.

9

including arranging meetings, hosting events, and contacting other government officials. Id. at 2365-66. After he was convicted, the petitioner moved to vacate his conviction, in part on the grounds that the jury instructions regarding the understanding of an "official act" was legally erroneous according to 18 U.S.C. § 201 (a)(3) (definition of an official act). Id. at 2367. According to the petitioner, the district court should have instructed the jury that arranging a meeting, attending an event, hosting a reception, or performing any other routine act, standing alone, are not "official acts" because they "are not decisions on matters pending before the government." Id.

Relying on Sun-Diamond, the Court held it was "apparent" that "merely setting up a meeting, hosting an event, or calling another official," alone, does not qualify as a decision or action which could form the basis of an official act. See id. at 2370. Rather, the Court reasoned, to qualify as a decision or action within the meaning of 18 U.S.C. § 201 (a)(3), the official must make a decision or take an action *on* a question or matter, or agree to do so. Id. at 2372 (explaining that initiating a research study, or narrowing down a list of potential research topics are examples of official acts because the public official is actually *acting on* a pending matter). Further, "that decision or action may include using his official position to exert pressure on another official to perform an 'official act,' or to advise another official, knowing or intending that such advice will form the basis for an 'official act' by another official." Id.

In this case, this Court finds that Counts I-XXI of the Indictment adequately inform Defendants of the nature of the charges against them and passes constitutional

muster because they reference the statute violated, reference the essential elements of the offense, provide the identities of the relevant parties, and provide the dates and amounts of the alleged bribery payments.   Pursuant to 18 U.S.C. § 201(b), the Government is required to allege the public official performed or agreed to perform official acts, which consists of a pending question or matter, and an action taken on that particular question or matter.  18 U.S.C. § 201(b).  In this case, the Indictment alleges that when the facility required physical maintenance, Defendant Gordon promoted, selected, contracted with, and made recommendations and requests for work on behalf of Defendant Ponder and his company P&E to ensure P&E was selected for available work.  (Doc. 1 ¶ 12).  Further, the Indictment alleges Defendant Gordon, through use of his FDA purchase card, directly paid Defendant Ponder for work performed at the facility.  (Doc. 1 ¶ 7).  The Indictment also alleges Defendant Gordon's job with the FDA involved overseeing certain building maintenance projects related to the facility. (Doc. 1 ¶ 2).  Therefore, the Indictment alleges the matters pending before Defendant Gordon involved the performance of various projects at the facility, and that he acted on those matters by selecting and influencing the selection of P&E as the contractor of choice.

Defendants argue the Government has alleged acts against Defendant Gordon which he did not have the power to perform in his role with the FDA.  Specifically, Defendants contend that all purchase card holders are required to obtain pre-approval from their supervisor, approving official, or higher authority, not Defendant Gordon,

11

prior to initiating a purchase transaction. (Doc. 34, p. 2). According to Defendant Gordon, in his role with the FDA, he was responsible for inventorying equipment, scheduling preventative maintenance, managing mechanical systems in the facility, and reviewing proposals from contractors for accuracy. (Doc. 34, p. 3). Even if Defendant Gordon's contention is accurate, at the indictment stage, it is inappropriate for this Court to assess whether Defendant Gordon had the capacity to perform the acts of which he has been alleged to have done. At this stage, the sufficiency of the Government's indictment is judged only from the face of the indictment. Salman, 378 F.3d at 1268. Therefore, this Court finds the Indictment properly alleges official acts taken by Defendant Gordon as defined in 18 U.S.C. § 201(a)(3).

Further, this Court finds the Indictment is in accordance with the holding in Sun-Diamond. First, unlike in Sun-Diamond, in this case the Government is not relying on Defendant Gordon's position alone as evidence that Defendant Gordon performed official acts. Indeed, the Government has alleged several specific official acts allegedly taken by Defendant Gordon. Second, the Court in Sun-Diamond did not consider whether the Government's indictment was sufficient. Instead, the Court assessed whether the district court provided the jury with improper jury instructions regarding the official act taken by the Secretary. Although in dicta the Court intimated that the Government's indictment may not have been sufficient, the insufficiency was due to the Government's reliance on the public official's position as an indication that he engaged in official acts, instead of alleging specific official acts he took. Therefore, the decision

12

in <u>Sun-Diamond</u> has no bearing in this matter.

Finally, this Court finds the Indictment properly complies with <u>McDonnell</u>. Unlike in <u>McDonnell</u>, where the public official took no action or decision on the matters pending before him and did not exert pressure on another official to make an action, in this case Defendant Gordon has been charged with taking actions himself and advising others to do the same on behalf of Defendant Ponder. The Indictment alleges Defendant Gordon took actions himself by selecting, contracting with, and paying Defendant Ponder and P&E. The Indictment also alleges Defendant Gordon influenced the selection of P&E to perform various projects for the facility, and directed other FDA employees to use their P-Cards to pay P&E (which may be interpreted as exerting pressure on other public officials). Further, the Court in <u>McDonnell</u> reversed the petitioner's conviction based on improper jury instructions, and did not assess whether the Government's initial indictment was sufficient. Again, at this stage of litigation, this Court's inquiry is based on the face of the indictment. <u>United States v. Salman</u>, 378 F.3d 1266, 1268 (11th Cir. 2004) ("[S]ufficiency of a criminal indictment is determined from its face.")

Additionally, Defendants argue the alleged actions charged in the Indictment, namely, selecting and influencing selection of P&E to perform work at the FDA, do not qualify as official acts as <u>McDonnell</u> narrowed the scope of the definition of an "official act." According to Defendants, the Government is required to specify how Defendant Gordon selected or influenced selection of P&E. Defendants contend that the

13

allegations in the Indictment show that Defendant Gordon did no more than "express support" for Defendant Ponder and P&E and provide advice about valid maintenance requests, which is akin to simply hosting a meeting or making a phone call because there is no assertion that Defendant Gordon exerted any unnecessary or coercive pressure.

As earlier noted, however, this Court finds the Government has sufficiently alleged Defendant Gordon had the authority to act "on" the vendor selection process by selecting P&E as a contractor himself and by advising others who relied on his opinion to do the same. This is unlike the meetings and phone calls arranged by the defendant in McDonnell because in that case, the defendant simply facilitated a company's access to public officials; he did not make, or try to make any decision that directly advocated for the company, and he was not responsible for providing advice on a particular subject that was of interest to the company. Further, it is for the jury to decide whether Defendant Gordon exerted enough pressure to qualify his actions as official acts. McDonnell, at 2371; see also United States v. deVegter, 198 F.3d 1324, 1326-27 (11th Cir. 1999) ("[A] court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial."); United States v. Williams, No. 3:16-CR-00003-TCB, 2017 WL 1030804, at *4 (N.D. Ga. Mar. 16, 2017) (McDonnell does not affirmatively question whether an indictment adequately charges an official act; instead, the full import of McDonnell will be addressed at trial.). Finally, at this stage, the Government is not required to allege the specific details of the official acts taken by Defendant Ponder; rather, it is sufficient that the Government allege enough details to

14

put the Defendants on notice as to what charges they are facing.  See e.g., United States v. Pratt, No. CRIM. ELH-12-401, 2013 WL 310565, at *8 (D. Md. Jan. 24, 2013) (finding the Government's indictment was sufficient although it generally alleged categories of job duties defendant was responsible for instead of offering specific details of her official acts); United States v. Quinn, 359 F.3d 666 (4th Cir. 2004) (upholding the sufficiency of an indictment that, without more, described the official acts at issue as "favorable consideration and recommendation on specified future contracts with the Treasury Department").  Therefore, this Court finds that the Government has sufficiently alleged Defendant Gordon committed an official act in exchange for things of value received from Defendant Ponder.  See e.g., United States v. Spellissy, 710 F. App'x 392, 392 (11th Cir. 2017) (finding that conduct involving the awarding of specific government contracts to certain companies still meets the definition of an "official act" after McDonnell).  Because the Indictment properly alleged acts of bribery under current law, Defendants' Motion to Dismiss Counts for Failure to Allege an "Official Act" Within the Meaning of the Bribery Statute should be denied.

## DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO ALLEGE AN OFFENSE

In Defendants' Motion to Dismiss Counts For Failure to Allege an Offense, Defendants argue Counts I-XXI (conspiracy to commit bribery and bribery charges) should be dismissed because the Government's theory of *quid pro quo* as alleged is unlawful. (Doc. 35).  According to Defendants, the Indictment charges Defendants with

15

a "stream of benefits" theory of *quid pro quo*, a theory that refers to a category of bribery where there are many gifts exchanged for many acts, instead of specific gifts tied to specific acts.  (See id.).  Defendants contend that with its decision in McDonnell, the Supreme Court impliedly foreclosed use of the "stream of benefits" theory for bribery. (Id.).  Therefore, Defendants argue, the Government is required to allege the specific details of the various projects P&E was hired to perform, including which projects they were, if there were other vendors available, and how Defendant Gordon influenced the selection of P&E.  (Doc. 35).  In response, the Government contends the stream of benefits theory of bribery is alive and well after McDonnell.  (Doc. 39).  The Government argues the Supreme Court did not address–much less invalidate–the stream of benefits theory in McDonnell, because it does not implicitly issue rulings.  (Id.). Furthermore, the Government argues every court to address the stream of benefits theory of bribery since McDonnell has concluded that the theory is still viable.  (Id.).

The "stream of benefits" theory of bribery has long been recognized as a valid theory for prosecuting bribery.  See United States v. Evans, 504 U.S. 255, 268 (1996) (The government need not prove the existence of an explicit agreement at the time a payment is received, instead, it is enough that a public official obtained payment to which he was not entitled, knowing that the payment was made in return for official acts); United States v. Coyne, 4 F.3d 100, 114 (2d Cir. 1993) (The government need not prove an explicit promise to perform a particular act made at the time of payment, rather, it is sufficient if the public official understands that in exchange for payment, he is

16

expected to exercise particular kinds of influence as specific opportunities arise); United States v. Martinez, 14 F.3d 543, 553 (11th Cir. 1994) (The Government need only demonstrate that payments were made in return for the defendant's promise to take actions in his official capacity).

Given the pervasiveness of the stream of benefits theory in established precedent, this Court finds it unlikely that the Supreme Court would impliedly invalidate the theory with its McDonnell decision without making an explicit finding. Morever, the Supreme Court does not normally overturn, or dramatically limit, earlier authority without making an express statement. See Shalala v. Ill Council on Long Term Care, 529 U.S. 1, 18 (2000). Further, lower courts are not permitted to conclude that more recent Supreme Court cases have, by implication, overruled an earlier precedent. Agostini v. Felton, 521 U.S. 203, 237 (1997). Additionally, it is undisputed that the McDonnell court was not presented with the issue of the appropriateness of the jury's stream of benefits instructions. (See generally, McDonnell v. United States, 136 S. Ct. 2355). Therefore, this Court finds Defendant's argument that the Supreme Court implicitly invalidated the stream of benefits instruction in McDonnell to be unpersuasive.

Additionally, many courts have reaffirmed the use of the stream of benefits bribery theory since McDonnell was decided in 2016. For instance, in United States v. Repak, 852 F.3d 230 (3rd Cir. 2017), the Third Circuit affirmed a defendant's bribery conviction under McDonnell although the government did not present explicit evidence of an "agreement" to influence the defendant public official. United States v. Repak,

852 F.3d 230, 250-51 (3rd Cir. 2017).  The court, citing <u>Evans</u>, reasoned that it was sufficient for the government to show that the public official obtained unauthorized payments in exchange for official acts.  <u>Id.</u> at 251.

Like the Third Circuit, the Second Circuit has endorsed the stream of benefits post-<u>McDonnell</u>.  In <u>United States v. Skelos</u>, 707 F. App'x 733, 738 (2d Cir. 2017), the defendants challenged, among other things, the sufficiency of the jury instructions regarding the *quid pro quo* bribery element.  <u>Id.</u>  While explaining a charging error with the "official act" instruction, the court separately explained that "acts constituting the agreement need not be agreed to in advance and "[a] promise to perform such acts as the opportunities arise is sufficient."  <u>Id.</u>

Further, many district courts have recognized the stream of benefits theory post <u>McDonnell</u>.  <u>See e.g.</u>, <u>United States v. Menendez</u>, F. Supp. 3d, 2018 WL 526746 at *2 (D. N.J. Jan. 24, 2018) (addressing explicitly whether <u>McDonnell</u> undermined the stream of benefits theory, and concluding that "a jury may find a *quid pro quo* if the Government shows 'a course of conduct of favors and gifts flowing to a public official *in exchange for* a pattern of official actions favorable to the donor" (quoting <u>United States v. Kemp</u>, 500 F.3d 257, 282 (3rd Cir. 2007))); <u>United States v. Williams</u>, 2017 WL 2713404 at *2 (E.D. Pa. June 13, 2017) (describing the exchange of "a multitude of pecuniary benefits" for official acts alleged in the indictment and citing <u>Kemp</u> for the proposition that a *quid pro quo* can consist of a "stream of benefits").  Finally, this Court notes that Defendants have not provided any case law to support its contention that

McDonnell foreclosed the use of the stream of benefits theory of bribery. Therefore, this Court finds that the Government has sufficiently alleged a *quid pro quo* arrangement between Defendant Gordon and Defendant Ponder. Because the Indictment properly alleges acts of bribery under current law, Defendants' Motion to Dismiss Counts for Failure to Allege an Offense should be denied.

## DEFENDANTS' MOTION FOR A BILL OF PARTICULARS

Defendants contend that the Government should be directed to file a bill of particulars which identifies (1) the "various projects" Defendant Gordon is alleged to have influenced the selection of P&E to perform; (2) the projects related to the "influencing and selection" of P&E; (3) the actions that government alleges are "influencing and selecting" on behalf of Gordon; (4) the projects the government alleges were acquired by Defendant Gordon by "promoting, selecting, contracting with and making recommendations"; and (5) the "official act" that Defendant Gordon is alleged to have performed (regarding Counts II-XXI). (Doc. 36). The Government contends that it has provided Defendants with ample information through both the Indictment and discovery. (Doc. 38). According to the Government, the discovery includes numerous memoranda of interviews with potential witnesses; lists of every P-card purchase to Defendant Ponder's business, and detailed reports from the lead case agent. (Id.). The Government contends Defendants are attempting to use a bill of particulars to gain inappropriate details about the Government's strategy for proving its case against Defendants. (Id.). While this Court is not persuaded that Defendants are entitled to

19

further information regarding all the items requested in their bill of particulars, Defendants are entitled to know which projects the Government alleges were products of bribes in order to allow them to prepare defenses and avoid surprise at trial.

Pursuant to Federal Rule of Criminal Procedure 7(f), "[t]he court may direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f). The purpose of a bill of particulars is "to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." United States v. Anderson, 799 F.2d 1438, 1441 (11th Cir. 1986) (quoting United States v. Cole, 755 F.2d 748, 760 (11th Cir. 1985)). A bill of particulars supplements an indictment by providing information *necessary* for a defendant to prepare for trial, and it is not meant to function as a discovery device. Anderson, 799 F.2d at 1441-42 (emphasis in original); see also United States v. Salisbury, 983 F.2d 1369, 1375 (6th Cir. 1993) (stating that a bill of particulars "is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial") (citing United States v. Kilrain, 566 F.2d 979, 985 (5th Cir. 1978)); United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990) ("Acquisition of evidentiary detail is not the function of the bill of particulars.") (quoting Hemphill v. United States, 392 F.2d 45, 49 (8th Cir. 1968), implied overruling on other grounds recognized, United States v. Lattimore, 946 F. Supp. 245, 246 (W.D.N.Y. 1996). The Court is vested with broad discretion in deciding whether to grant a motion for bill of particulars. Cole, 755 F.2d at 760; United States

20

v. Colson, 662 F.2d 1389, 1391 (11th Cir. 1981).  However, "where an indictment fails to set forth specific facts in support of requisite elements of the charged offense, and the information is essential to the defense, failure to grant a request for a bill of particulars may constitute reversible error." Cole, 755 F.2d at 760; see also United States v. Sharpe, 438 F.3d 1257, 1263 n.3 (11th Cir. 2006) (noting that an indictment need not allege in detail the factual proof that will be relied upon to support a charge but that failing to grant a motion for a bill of particulars to obtain information essential to the defense may be reversible error); United States v. Rosenthal, 793 F.2d 1214,1226-27 (11th Cir. 1986) (holding that the government was not required to provide the defendant with the essential facts regarding the formation of a conspiracy or every overt act that might be proven at trial) (modified on other grounds, United States v. Rosenthal, 801 F.2d 378 (11th Cir. 1986)).

In this case, some additional factual detail is necessary so that Defendants can prepare their defense and minimize surprise at trial.  The Indictment, while legally sufficient, fails to provide Defendants with sufficient factual information to prepare their defense as to which projects awarded to Defendant Ponder are the product of illegal activity.  Defendants state that P&E has performed most of the repairs at the facility for the last ten years, starting before the alleged conspiracy began.  (Doc. 38, p.4). Additionally, Defendants state that all the work P&E did was necessary and were up to or exceeded standards.  (Id.).  Defendants contend it will be overly burdensome for them to investigate the cause of every micro-purchase given to P&E.  (Id.).  Therefore,

AO 72A
(Rev.8/82)

Defendants argue, to adequately prepare for trial, they must know in advance which micro-purchases the Government believes were performed by P&E due to the alleged influence of Gordon.

This Court agrees with Defendants. Given the expansive history between the facility and P&E, it is not unreasonable to require the Government to narrow the scope of projects Defendants must investigate. Although the Government has produced ample discovery in this matter, the Government has not provided sufficient information detailing which projects were illegally obtained by P&E, although the illegal activity is alleged to have spanned over five years. Accordingly, the Government is **ORDERED** to provide, within twenty (20) days of the entry date of this Order and Report and Recommendation, a bill of particulars in which the Government shall generally describe the projects performed by P&E which the Government alleges were a result of illegal activity taken by Defendant Gordon. See United States v. Long, No. 1:08-CR-043-CC-AJB, 2008 WL 11336760, at *4 (N.D. Ga. Oct. 3, 2008) (holding the defendant was entitled to a bill of particulars detailing which contracts the government contended were fraudulently obtained when the conspiracy spanned eight years, during which time numerous contracts were awarded, and the conspiracy included a time period that extended into defendant's retirement); Cf. United States v. Addonizio, 451 F.2d 49, 63-64 (3d Cir. 1971) (holding no abuse of discretion in denying bill of particulars concerning identification of the construction contracts involved in conspiracy because the indictment listed two of the construction jobs connected to the conspiracy); United

22

States v. Nicolo, 523 F. Supp. 2d 303, 316 (W.D.N.Y. 2007) (denying motion for bill of particulars where 179-page indictment set forth conspiracy in extensive detail, including listing dates into which appraisal contracts were entered).

The remainder of the information sought by Defendants is not necessary to avoid surprise or prepare their defense. The Indictment adequately informs Defendants of the purpose of the agreement, participants in the agreement, the time period of the conspiracy, and the general nature of the official acts that Defendant Gordon performed in furtherance of the conspiracy. Further detail is not necessary to allow Defendants to prepare their defense. See e.g., United States v. Gomez, No. 10-10023-TM, 2011 WL 5828016, at *2 (D. Kan. Nov. 18, 2011) (concluding that defendant was not entitled to bill of particulars including specific terms of agreement and other information); United States v. Molina, No. 09-40041-01-10-RDR, 2010 WL 2346393, at *5 (D. Kan. June 9, 2010) (neither the indictment nor a bill of particulars need identify the specific terms of the conspiratorial agreement); United States v. Welch, No. 09-40029-09, 2010 WL 358075, *1 (D.S.D. Jan. 29, 2010) (declining to compel bill of particulars as to details about the substance of any agreements and information about instances in which the agreements were carried out because indictment sufficiently alleged the essence of the charges); United States v. Miller, 250 F.R.D. 588, 600 (D. Kan. 2008) (refusing to compel bill of particulars because neither the indictment nor the bill of particulars need identify the specific terms of the conspiratorial agreement). Accordingly, Defendants' Motion for a Bill of Particulars is **GRANTED IN PART AND DENIED IN PART**.

23

Defendants' Motion is **GRANTED** with regard to the projects performed by P&E obtained through the alleged illegal activity of Defendant Gordon.  Defendants' request for additional information is **DENIED**.

## CONCLUSION

Based on the foregoing, this Court **RECOMMENDS** that Defendant's Motion to Dismiss Counts for Failure to Allege and "Official Act" Within the Meaning of the Bribery Statute, and Defendant's Motion to Dismiss Counts for Failure to Allege an Offense be **DENIED**.  (Doc. 34, 35).  Additionally, Defendants' Motion for Bill of Particulars is **GRANTED IN PART AND DENIED IN PART**.  (Doc. 36). Defendants' Motion for Bill of Particulars is **GRANTED** with regard to projects performed by P&E obtained through the alleged illegal activity of Defendant Gordon and **DENIED** with regard to Defendants' request for additional information. (Doc. 36).

**SO ORDERED, REPORTED AND RECOMMENDED** this  15  day of May 2018.

/s/Linda T. Walker
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

24